Good morning, Your Honors. My name is Lisa Cantor, and I'm here this morning on behalf of the appellant, John Silk. I understand I have ten minutes for argument. I'd like to reserve two minutes. This is an ERISA case about long-term disability benefits, but unlike most ERISA disability cases, the respondent has conceded that Mr. Frost is and always has been disabled. Maybe you can update us right now, just because this has sort of been an ongoing saga in terms of it's gone on for a period of time, but it did say in one of the briefs that the any occupation had been paid out, and so is everything done now? Yes. To what extent has the any occupation long-term benefits been processed and paid? Right before the decision came out, the any occupation benefits were approved. They were paid until Mr. Silk received Social Security benefits sometime in 2007, June 2007. He received a retroactive award, so they recovered the overpayment and then stopped paying him because they're still trying to recover what they claim to be an overpayment. So he has been approved through NEOC, but benefits stopped in June 2008 to recover what MetLife considered to be an overpayment. Okay, but the any occupation that is done, and that was also mentioned in the briefs, one of the things was there was a $2,200 on the... Correct. Was that resolved? No, Your Honor, and we've been trying to deal with that with MetLife throughout this time period. In fact, correspondence just was sent out last week. Because we didn't get summary judgment, MetLife assured us they were going to recalculate his benefits in 2007, and that recalculation has never been done, so we're trying to work that through with them. It would still, an overpayment claim would still remain even if that $2,200 and the recalculation was done. But it seems like the issues here is whether Mr. Silk was entitled to own occupation and any occupation benefits, and these other issues are not raised. I mean, the answer is yes, that he's getting these benefits, and then there's some antecedent or interior issues about computation and set off and the like. So I'm wondering why this case is not moot at this point. The case is not moot, Your Honor, because the issue is whether he's entitled to recover his attorney's fees. But we have a case that says the attorney's fees issue is ancillary, and it can't save a case from being moot. This Kammermeier case, I don't believe, was cited. So if the attorney's fees is ancillary, then is the case moot? No, Your Honor, because at the time that the motion – let me back up a minute, if I may. The issue was whether there was a claim submitted before the case was filed. Because as we all know, you have to exhaust administrative remedies before you file an ERISA case. The answer to that question is found in the plan, because the plan says that when you've exhausted your short-term disability benefits, you are rolled over to long-term disability and that no further application is required. And at least six times in the record, NetLife acknowledges that Mr. Silk has a long-term disability claim and that at one point they give him a number and they say he's on claim, and then they do nothing. And it's December 2004, he was eligible for long-term disability benefits in February 2004, and they do nothing. Now, by operation of the regulations, he's deemed to have exhausted his administrative remedies and he's allowed to file a lawsuit. Okay, but it's still all done now. It's all done now, except, Your Honor, at the time that the motion was made, the only reason that NetLife ever paid these benefits was because he filed a lawsuit. He had to exercise that remedy, and by exercising that remedy, he lost some of his benefits because he had to pay a lawyer. And that's what's not fair. Aside from anything else, difficulty I'm having here is it looks to me as if in his complaint, he said, I want attorney's fees. And in his summary judgment, at the end he said, I'd like to be allowed to file a motion for attorney's fee. Did the district judge say, no, you can't file a motion? Yes, the district judge said, we're dismissing your case for failure to exhaust administrative remedies. That's not the question I asked you. Well. Did the district judge say, no, you cannot file a motion? No. Was a motion ever filed? No. Well then, what are we doing trying to decide whether the district court erred in not awarding attorney's fees when there was never a motion for attorney's fees filed with the district court? Because to be able to file a motion for attorney's fees, I need to be the prevailing party. And having had my case dismissed, how could I possibly be the prevailing party? Well, I think part of what you're telling us is you did prevail. That's the point. You may not have been prevailing in the sense that you filed your case before the administrative work was done, finished. That may be true. But the point is, you never asked, you never moved the district court for fees. If you don't make a motion for fees, how in the world can we review whether the motion for fees should be granted? If you made a motion for fees and said, look, Judge, you know, really, you may have dismissed the case at this point, but you dismissed it largely because everything we did caused them to pay benefits. And therefore, we're really prevailing. Judge, won't you consider that? You didn't do that. You didn't make a motion. You didn't do anything. District Judge Stoller can hardly have erred if she didn't have anything in front of her. We did make a cross motion for summary judgment, and that is, at that time at least, was the mechanism. And the motion doesn't include a motion for fees. That's right. All it says at the end is, I hope you'll allow me, I hope we'll be allowed to file an appropriate motion. She didn't say no, you can't file an appropriate motion. You didn't file one. Well, I don't know how to answer the question other than to say that as I know as an ERISA practitioner, you need to have a prevailing judgment to file a motion for fees. I've never filed a motion for fees on my case when I've lost a summary judgment motion or had a case dismissed against me. I think it would be a frivolous motion at that point. In order to be prevailing, I needed to have exhausted my name. The reason it was moot was because you kept, you know, I mean, obviously there's been a lot of delay here, and you had to do a lot of things to keep this up, and we'll ask questions of the appellee on this point. So why didn't you file a motion then is a good question, because your whole point is, and it's the point that you're arguing here at this point, is the only reason these are moot, or the only is if I hadn't been doing all of this, nothing would have ever gotten done. And what, it took, what, four or five years, or how long are we into this? Correct. Except that was precisely the issue I was trying to put in front of the court with the motion for summary judgment, because what I was looking for was a judgment on the own-awk period. And the reason I couldn't get that judgment and the reason she, maybe it was an erroneous assumption,  The court, you know, I would make the argument that the court did have jurisdiction to, even though the court dismissed as moot and said you hadn't exhausted and it wasn't right, the court still had jurisdiction to hear attorney's fees at that point, didn't it? I think when a court decides you haven't exhausted your administrative remedies, I do not think it has jurisdiction to give you fees when you haven't, when it's told you you have not exhausted your administrative remedies. There's the error, is what I'm saying. Because the claim was submitted before, it was deemed denied before he filed. Having told me that I didn't have a valid ERISA claim, how could I then have a claim for attorney's fees for my ERISA claim? So if we should decide that indeed, for whatever reason, horror of horrors, you had not exhausted your administrative remedies as to that portion of the claim at least, you hadn't exhausted them, then you agree you shouldn't get attorney's fees. Correct. Okay. Thank you. I'll reserve the rest of my time. All right. Thank you. Good morning, Your Honors. I'm Rebecca Hall. I represent the appellee in this case. Obviously, the court has some questions, but it seems to me that we need to start at the beginning here. We've heard over and over that Mr. Silk supposedly had an ongoing claim, that it was in process. In fact, I think I heard, perhaps this was a misstatement, even that he was on claim during this period. None of that is, in fact, correct. We've gone through the history of this in our brief and laid out for the court what actually happened here. Well, and I think we're familiar with that. But I don't think that the time in the history necessarily makes you look that good either. Well, I disagree, Your Honor, for the reason that what we have here is someone who is given very specific instructions. If you do want to make an LTD claim, and he was, by that time, working half-time already, if you do want to make an LTD claim, you have to return the application and you have to support it with the medical evidence. I didn't really see that in the summary plan description. The summary plan description seems to say that if you're approved for short-term disability benefits, that MetLife will then automatically transfer that over to long-term disability benefits. And it seems to be automatic under the summary plan description. So why wasn't that enough to exhaust the remedies? MetLife then closed the LTD claim, which certainly seems close enough to a denial to me, and 45 days passed after that. Why wasn't that enough? There are several places in the summary plan description, Your Honor, where the process of getting from STD to LTD is discussed. But there are a number of places that make it very clear  But then they send the person the application forms and the supporting forms to be filled out and returned, which is what happened here. But does it say in the summary plan description, and if you don't fill out these forms that we have sent you, we will deem that you haven't made a claim for long-term disability? I don't think it actually says that, but I think that is certainly implicit in it. If you were to just call up the LTD carrier on the phone, for instance, and say, I want to make a claim, and they say, great, we'll send you the application forms, and you never send it back, I don't think you've actually perfected your claim, as it were. So to my mind, there was really nothing here to be denied, much less was there something that entitled him to go out and file a lawsuit when he hadn't even submitted the claim. The district court found that he did not submit the claim, right? That was done just by operation of transferring over the short-term disability to long-term disability, as set out in the summary plan description. I don't agree, Your Honor, because the summary plan description includes things like this. This is an excerpt of Record 1166. Complete all forms provided to you by MetLife. The forms included in your application package may be release of medical information and so on. And it goes on and says in the SPD that MetLife will begin the claim transition process for you and will notify you within 45 days after they receive proof of your loss. And that's what didn't happen here. And he was told not only in this form, but there were at least two discussions with him over the phone where he was reminded of this. He was reminded that he has to send it back. In fact, one of the notes says he was urged to return his forms, but he did nothing, and they couldn't even reach him after that. They tried to call him after that and couldn't even reach him. This was in May. And in December, he files a lawsuit without having done anything more, never returned any of the forms, never gave updated medical information, although he had disclosed he was working. So I don't think in those circumstances that he ever in fact even perfected a claim, even though the LTD unit was willing to assist him and in fact had preliminarily opened a claim number and sent him the forms. So is the perfecting a claim concept in the summary plan description, or are you saying it's implicit? I think it's implicit in it because it says, for instance, that ER 1168-69, that NetLife will begin the claim process for LTD and will notify the participant of a decision within 45 days after it receives due proof of the loss. So to me, that is certainly implicit that you have to complete this process. You can't, as he seems to do, expect the company to just do all your work for you, particularly where it's already clear in the record that he's gone back to work. So it seems to me that in those circumstances, he's got to come forward and do what the SPD tells him he has to do, which is that it's up to him to complete all the forms and send them back. And that's the problem with this is he didn't do any of those things. He just went out and filed a lawsuit. And even at the initiation of the lawsuit, this came up. It was brought up that, in fact, he had not completed this process, and it still took him another nine months to ever submit the application form with the necessary records, and once he did that, his claim was paid. So doing that clearly was not a moot exercise, but he didn't do it before filing his lawsuit, as the district court found, and I don't think the district court abused her discretion in concluding that he had never applied until September of 2005. Why didn't the summary judgment put you on notice that they were requesting attorney's fees? And under ERISA, it's my understanding that you don't necessarily have to be the prevailing party to be entitled to attorney's fees. I mean, doesn't the ERISA provide that in any action by participant, beneficiary, or fiduciary, the court, in its discretion, may allow reasonable attorney's fees and costs of action to either party? Certainly, that's what the statute says. So I don't see prevailing party, though. Well, I would say that there was no fee petition to which to respond. I mean, the problem is, all that was in that summary judgment brief was sort of an anticipatory, we would like to do this. Well, did the court, are you saying then that, did the court have jurisdiction to consider attorney's fees at that point? Is that where it should have been considered? I think... I bet you would have said no, but at the time... I would have said that there was no substantive basis for a fee award. Actually, it was not the counsel below, but I would certainly concur in such a statement by the counsel at the time because there was no, well, there was no reason to award fees for a couple of reasons. One is the lawyer... I know, but was that the place where the court should have considered it? Fees in this case? No, typically it is done separately after the disposition of the case. For instance, MetLife theoretically could have made a fee petition itself after prevailing below, although typically it does not do that. That would be a very, very unusual situation. How did you prevail? I'm sorry? How did you prevail? How did... You paid benefits on one of them, and the other one you just... Because the litigation was dismissed and judgment was entered in favor of my client against the plaintiff. All right, but it doesn't say prevailing party here. No, I understand, Your Honor. All I'm saying is that typically the practice would be to file a fee petition separately and after the disposition on the merits. That wouldn't be unusual. So do they still have time to do that then? No, because typically it's... Actually, I don't remember what the central district's rule is, but typically it's within something like 20 days after the entry of judgment. I don't think that there is time now for them to do that, but really more to the point, under a large body of law, you do not get fees for what amounts to assisting a participant to obtain benefits in the first instance in the administrative arena, which is what was supposed to happen here. Substantively what happened is no different from if Mr. Silk had decided to retain counsel to assist him in prosecuting his claim without filing a lawsuit, and you don't get fees simply because you file a premature lawsuit. I think, really, though, that the key to this is simply that there were a number of procedures that Mr. Silk was required to follow in order to make a claim, and he chose not to follow them. In fact, before the district court, he continued to argue that he didn't have to even provide medical records, that he had to do nothing,  which I think ties in closely with the fact that she concluded that he had not exhausted administrative remedies. That was his argument below, though, that he didn't have to do anything ever, and that simply is not what the summary plan description says, nor is it logical that that would be the case. I have nothing further unless there are no questions. MS. MCGOWAN. There doesn't appear to be any further questions by the panel. Thank you. Thank you. We did not argue that Mr. Silk did not have to provide medical records. I've done ERISA cases too long to know that that's not the truth. However, the summary plan description specifically states, and I'll quote, no LTD application is required to transition from STD to LTD if you have been approved for STD benefits. It says that at the record at 1145. There's similar language at 1168. At the time in February of 04, when STD benefits expired, in March of 04, NetLife specifically had a doctor look at Mr. Silk's claim, Dr. Minotti, who concluded that he would be disabled through at least December of 04, and he thought probably longer than that because he had an ulcer that wasn't healing. What NetLife thought it needed in April of 04 in terms of forms, nobody seems to know. On April 7th of 04, Mr. Silk actually signs a reimbursement agreement and an agreement to get medical records in connection with his STD claims. So those forms are in the record already. But the point is, and the reason why I wanted your honors to consider the Glenview NetLife case and the Safon case is ERISA is about communication. If they thought they needed something else, why didn't they tell him that? They write to him and say, you have an LTD claim, we're considering it, and then no communication for six months at all. Even after we filed a lawsuit and we arranged to submit the forms they want, 600 pages of medical records. Okay, you need to wrap up your comment. You're in overtime. I'm sorry, your honor. I just wanted to make the final point that I did also bring the Vought case in front of the court. The standard of review is de novo, not abuse of discretion. Abuse of discretion and exhaustion of administrative remedies only applies when we're talking about things like futility. The proper standard of review here is de novo. Thank you. All right, thank you both for your argument. This matter is now submitted.
judges: Fernandez, Callahan, Ikuta